1

2

3

4

5

6

7

8                              UNITED STATES DISTRICT COURT

9                           FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   RONALD F. TRINCHITELLA,                        No.  2:15-cv-02365-KJM-EFB

12                    Plaintiff,

13          v.                                       ORDER

14   AMERICAN REALTY PARTNERS, LLC,
     et al.,
15
                     Defendants.
16

17

18              Over the course of one month, representatives of American Realty Partners (ARP)

19   and Performance Realty Management (PRM) called and emailed Ronald Trinchitella, a California

20   resident, to solicit his investment in Arizona real estate.  During the solicitations, Mr. Trinchitella

21   was promised an eight percent annual return on his investment, with an overall projected return of

22   fifteen to eighteen percent.  After Mr. Trinchitella made an initial investment, ARP and PRM

23   solicited additional investments for several more months.  He declined to make further

24   investments until he received his first return.  After seeing no returns, and after unfulfilled

25   promises to return his investment, Mr. Trinchitella filed suit in California against ARP, PRM,

26   American Housing Income Trust, Inc. (AHIT), and Sean Zarinegar, AHIT's CEO, board

27   chairman, and president, and the manager of ARP and PRM.  Defendants move to dismiss

28   /////

                                                   1

1    Mr. Trinchitella's complaint, contending this court lacks personal jurisdiction, venue is improper,

2    and Mr. Trinchitella is subject to an arbitration agreement for claims against ARP.

3              At the hearing on this motion, Scott Judson appeared for plaintiff and Devin Bone

4    appeared for defendants.  As described below, defendants' motion is GRANTED in part and this

5    case is STAYED pending completion of arbitration.

6    I.       PROCEDURAL HISTORY

7              On September 22, 2015, Mr. Trinchitella filed suit in the Superior Court for the

8    County of San Joaquin against three out-of-state corporations and one corporate representative:

9    ARP and PRM, two limited liability companies organized under the laws of Arizona with

10   principle places of business in Arizona, Compl. ¶ 2, ECF No. 1; AHIT, a corporation organized

11   under the laws of Maryland with a principle place of business in Arizona, *id.* ¶ 4; and Sean

12   Zarinegar, a resident of Arizona, *id.* ¶ 5.  Mr. Trinchitella also named several unknown fictitious

13   defendants, but they have not been identified or served.  *Id.* ¶ 6.  The court DISMISSES the Doe

14   defendants.  Fed. R. Civ. P. 4(m) (on its own motion, court may dismiss defendants not served

15   within ninety days after complaint is filed); *Craig v. United States*, 413 F.2d 854, 856 (9th Cir.

16   1969).

17             Mr. Trinchitella's operative complaint alleges seven claims: (1) breach of written

18   contract, (2) breach of oral contract, (3) promissory fraud, (4) consumer fraud, (5) intentional

19   misrepresentation, (6) negligent misrepresentation, and (7) common law fraud.  *See generally*

20   Compl.  Defendants removed the suit to this court on the basis of diversity jurisdiction, Not.

21   Remov. 2, ECF No. 1, and now move to dismiss all of Mr. Trinchitella's claims.  *See generally*

22   Mot., ECF No. 4-1.  Mr. Trinchitella filed an opposition, Opp'n, ECF No. 5, and defendants

23   replied, Reply, ECF No. 7.

24   II.      FACTUAL BACKGROUND

25             In analyzing a motion to dismiss for lack of jurisdiction, the court may rely on the

26   plaintiff's complaint and the parties' affidavits.  *See Ochoa v. J.B. Martin & Sons Farms, Inc.*,

27   287 F.3d 1182, 1187 (9th Cir. 2002) (where trial court relied on affidavits and discovery materials

28   to determine personal jurisdiction, dismissal is appropriate only if the plaintiff has not made a

1  prima facie showing of personal jurisdiction); *Fields v. Sedgwick Assoc. Risks, Ltd.*, 796 F.2d

2  299, 301 (9th Cir. 1986) (same).  As such, the court relies on Mr. Trinchitella's complaint and the

3  parties' declarations in reviewing the following factual background.

4          A.     Mr. Trinchitella Invests with ARP

5          In January 2014, Jack Combs, the Managing Partner of ARP, called Mr.

6  Trinchitella to solicit an investment in Arizona real estate.  Compl. ¶ 9.  Mr. Combs informed him

7  a $150,000 investment would earn an annual return of eight percent or more, with an overall

8  projected return of fifteen to eighteen percent.  *Id.* ¶ 10.  Within the next month, Mr. Trinchitella

9  had similar follow-up conversations with Mr. Combs, and with Mr. Zarinegar and Dan Sheriff,

10  the Senior Account Manager of ARP.  *See id.* ¶¶ 9, 11, 14; Trinchitella Decl. Ex. 1 at 1, ECF No.

11  5-3.  After one such conversation, Mr. Sheriff sent an email thanking Mr. Trinchitella for the

12  discussion.  Trinchitella Decl. Ex. 1 at 1.  He sent the email from a PRM address with links to the

13  PRM website and an introductory video about PRM.  *Id.*

14          During the discussions, Mr. Trinchitella explained he did not want to invest in

15  stock.  Compl. ¶ 12.  He was assured his investment would not include stock, *id.*, he could be

16  refunded his $150,000 at any time if he was not happy for any reason, and he would be able to

17  withdraw any earnings once a year without compromising the capital contribution,[1] *id.* ¶¶ 12–13.

18  While the record does not make clear who gave Mr. Trinchitella these assurances, his complaint

19  suggests it was Mr. Zarinegar, Mr. Combs, or Mr. Sherriff or more than one of them.  *See id.*

20          On February 12, 2014, Mr. Trinchitella accepted the offer to make an investment,

21  sending a check for $150,000 to ARP and signing the Subscription Agreement PRM sent to

22  memorialize the terms of the investment.  *Id.* ¶ 14; Compl. Ex. A at 11–17, ECF No, 1.  At

23  hearing, the parties did not dispute Mr. Trinchitella signed and executed the Subscription

24  Agreement in California.

25

26  _____

27      [1] Capital Contribution, or Contributed Capital, is a payment made in cash or property to a corporation by its stockholders either to buy capital stock or to pay an assessment on capital stock. *Dictionary of Finance and Investment Terms* 141 (7th ed. 2006).

28

1   Over the next year, Mr. Trinchitella received monthly calls from Mr. Sheriff

2   soliciting further investments in Arizona real estate.  Compl. ¶ 19.  During the same time frame,

3   he also received a letter from Mr. Zarinegar on PRM letterhead, soliciting further investments.

4   Trinchitella Decl. Ex. 3.  In discussions with Mr. Sheriff, Mr. Trinchitella declined to make

5   further investments until he received his first return.  Compl.  ¶ 19.  In January 2015, Mr.

6   Trinchitella called Mr. Sheriff to inquire about the status of his investment and to obtain

7   supporting documentation.  *Id.*  Mr. Sheriff assured Mr. Trinchitella ARP was earning a return

8   somewhere between eighteen percent and twenty-two percent, but no documentation verifying

9   these returns was provided.  *Id.*

10   A month later, Mr. Zarinegar informed Mr. Trinchitella during a phone call that

11   his investment was being converted to stock as part of a restructuring plan.  *Id.* ¶¶ 20–21.  Under

12   this plan, ARP would merge AHIT's predecessor company, Affinity Mediaworks Corporation,

13   with AHIT, and have AHIT survive as the named entity.  *Id.* ¶ 4. After the merger, ARP units[2]

14   would be converted to shares in AHIT, effectively giving Mr. Trinchitella stock in AHIT.  *Id.*

15   Mr. Trinchitella reiterated he had no interest in investing in stock and requested Mr. Zarinegar

16   return his entire investment in addition to the guaranteed annual return of eight percent.

17   *Id.* ¶¶ 4, 21.  Mr. Zarinegar promised to send a check for $150,000 by March 2015.  *Id.* ¶ 22.  The

18   record does not make clear whether Mr. Zarinegar also promised Mr. Trinchitella a check in the

19   amount of an eight percent annual return.  At the time this conversation took place, Mr. Zarinegar

20   had already sent Mr. Trinchitella a copy of the AHIT restructuring plan and a ballot to approve

21   the asset conversion.  Trinchitella Decl. Ex 5 at 1–6.  The ballot included instructions to complete

22   and return to Sean Zarinegar, who signed "[o]n behalf of Performance Realty Management,

23   LLC."  *Id.* at 6.  The ballot also stated, "Performance Realty is of the opinion" that the stock

24   conversion is the best solution.  *Id.* at 3.  The record does not make clear whether Mr. Trinchitella

25   returned this ballot.

26

27   [2] In primary and secondary distributions of securities, a unit is one share of stock or one
bond.  *Dictionary of Finance and Investment Terms* 770 (7th ed. 2006).

28

1    Mr. Trinchitella never did receive the $15,000 check as promised. *Id.* ¶ 27.

2 Instead, on April 7, 2015, Mr. Trinchitella received notice of a $36,156 loss on his investment, far

3 below the promised eight percent positive yearly return. *Id.* ¶ 26; Trinchitella Decl. Ex. 2 at 1.

4 Mr. Trinchitella had another discussion with Mr. Zarinegar in May 2015, where Mr. Zarinegar

5 promised to send a check by June 18, 2015. Compl. ¶ 25. Mr. Trinchitella never received this

6 check. *Id.* ¶ 27.

7    B.    Subscription Agreement

8    As noted, Mr. Trinchitella signed and executed a Subscription Agreement

9 establishing the terms of his initial investment. Compl. Ex. A at 11–15. The Subscription

10 Agreement included a choice-of-law provision, which stated,

11
> This Agreement will be governed by and construed in accordance
12 > with the laws of the State of Arizona, without giving effect to any
> choice of law principles that would dictate the application of
13 > another State's law.

14 *Id.* at 14. The Subscription Agreement also included an arbitration clause, which provided,

15
> Any controversy, claim, or dispute arising out of or related to this
16 > Agreement will be resolved through binding arbitration. The
> arbitration will be conducted by a sole arbitrator mutually selected
17 > by the undersigned and the Company.

18
> If the parties cannot agree upon an arbitrator, each party will select
> an arbitrator and the two selected arbitrators will mutually select the
19 > sole arbitrator to resolve the dispute.

20
> Either party may request and thus initiate arbitration of the dispute
> by written notice to the other party (the "Arbitration Notice"). The
21 > Arbitration Notice will state specifically the dispute that the
> initiating party wishes to submit to arbitration.

22
> The arbitration will be conducted in Maricopa County, Arizona, and
> in accordance with the Commercial Arbitration Rules of the
23 > American Arbitration Association then in effect.

24
> Any judgment upon the award rendered by the arbitrator may be
> enforced through appropriate judicial proceedings in any federal
25 > court having jurisdiction.
> Prompt disposal of any dispute is important to the parties. The
26 > parties agree that the resolution of any dispute will be conducted
> expeditiously. To that end, the final disposition of the dispute will
27 > be accomplished no later than 120 days after the date of the
> Arbitration Notice.

28

5

1    *Id.* The Subscription Agreement does not expressly identify the contracting parties. The bottom

2    of the Subscription Agreement, however, shows Mr. Trinchitella's signature, Mr. Zarinegar's

3    signature next to the statement "American Realty Partners, LLC," and notes the agreement is

4    "accepted" by PRM. *Id*. at 15. Defendants conceded at hearing that PRM acted on ARP's behalf

5    when it signed the Subscription Agreement. AHIT is mentioned nowhere in the Agreement.

6    III.    <u>DISCUSSION</u>

7        Defendants argue they are not subject to the jurisdiction of this court, venue is

8    improper, and in any event, Mr. Trinchitella is subject to the arbitration clause in the Subscription

9    Agreement for claims made against ARP. Mot. at 5–20. Mr. Trinchitella contends this court has

10    personal jurisdiction over defendants, venue is proper, and the arbitration agreement at issue is

11    unconscionable and therefore unenforceable. Opp'n at 9–24. The court proceeds to the merits of

12    each issue.

13       A.    <u>Personal Jurisdiction</u>

14        Defendants argue Mr. Trinchitella's claims must be dismissed because this court

15    lacks general and specific personal jurisdiction. Mot. at 6–7. Mr. Trinchitella responds only to

16    the specific jurisdiction arguments and contends "[d]efendants have invoked the benefits and

17    protections of California's laws," thereby placing this suit properly in this forum. Opp'n at 10.

18    In the absence of any argument discussing or supporting general jurisdiction, the court construes

19    Mr. Trinchitella's opposition as disclaiming general jurisdiction and relying solely on specific

20    jurisdiction; therefore the court proceeds to address specific jurisdiction only. *See Sher v.*

21    *Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990) (declining to determine whether general

22    jurisdiction existed because plaintiff argued only specific jurisdiction existed).

23        Rule 12(b)(2) of the Federal Rules of Civil Procedure provides that a party may

24    move to dismiss a complaint for lack of personal jurisdiction. Although the defendant brings the

25    motion, it is the plaintiff's burden to establish the court's personal jurisdiction. *See Sher*, 911

26    F.2d at 1361. Where, as here, the court makes the jurisdictional determination without an

27    evidentiary hearing, "the plaintiff need make only a prima facie showing of jurisdictional facts to

28    withstand the motion to dismiss." *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995).

1            1.     Legal Standards: Specific Personal Jurisdiction

2           To make a prima facie showing, the plaintiff "need only demonstrate facts that if

3    true would support jurisdiction over the defendant." *Id.* In particular, the plaintiff must convince

4    the court the defendants' "conduct and connection with the forum State" is such that the

5    defendants "should reasonably anticipate being haled into court there." *Sher*, 911 F.2d at 1361

6    (citing *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

7           In ruling on defendants' motion, uncontroverted allegations in the plaintiff's

8    complaint must be taken as true, and conflicts between the facts contained in the parties'

9    affidavits must be resolved in the plaintiff's favor. *Ochoa*, 287 F.3d at 1187. The court is not

10   required, however, to accept "conclusory claims" or "legal conclusions" in determining whether

11   the plaintiff has made a prima facie showing. *Elowson v. Jea Senior Living*, No. 14–02559, 2015

12   WL 2455695, at *3 (E.D. Cal. May 22, 2015). The court also looks to the personal jurisdiction

13   rules of the forum state in ruling on defendants' motion, provided the exercise of jurisdiction

14   comports with due process. *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986). California

15   imposes no greater restrictions than the United States Constitution, and as such, "federal courts in

16   California may exercise jurisdiction to the fullest extent permitted by due process." *Id.*

17          A court may exercise specific personal jurisdiction over a non-resident defendant

18   whose "minimum contacts" with the forum state are "sufficient" in that they relate to the claims

19   made in a case. *Sher*, 911 F.2d at 1361. The minimum contract inquiry focuses "on the

20   relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, ___U.S.___,

21   134 S. Ct. 1115, 1118 (2014). The Ninth Circuit has established a three-prong test for

22   determining whether the plaintiff has alleged sufficient "minimum contacts":

23            (1) The non-resident defendant must purposefully direct his
         activities or consummate some transaction with the forum or
24            resident thereof; or perform some act by which he purposefully
         avails himself of the privilege of conducting activities in the forum,
25            thereby invoking the benefits and protections of its laws; (2) the
         claim must be one which arises out of or relates to the defendant's
26            forum-related activities; and (3) the exercise of jurisdiction must
         comport with fair play and substantial justice, *i.e.* it must be
27            reasonable.

28

1   *Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015) (citing *Schwarzenegger v. Fred Martin*

2   *Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004)).  These prongs are identified in shorthand fashion

3   as: (1) purposeful availment and direction; (2) forum-related conduct; and (3) reasonableness.

4   *See Menken v. Emm*, 503 F.3d 1050, 1057 (9th Cir. 2007).

5          When a plaintiff seeks to invoke specific personal jurisdiction, she must establish

6   jurisdiction for "'each claim asserted against a defendant.'"  *Picot*, 780 F.3d at 1211 (quoting

7   *Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1180 (9th Cir. 2004)).  If

8   personal jurisdiction exists over one claim, but not others, the district court may exercise pendent

9   personal jurisdiction over any remaining claims that arise out of the same "common nucleus of

10  operative facts" as the claim for which jurisdiction exists.  *Id.*

11          2.      <u>Analysis</u>

12                  a)      <u>Purposeful Availment and Purposeful Direction</u>

13          Under the first prong, the plaintiff must establish defendants either purposefully

14  availed themselves of the privilege of conducting activities in California or purposefully directed

15  their activities toward California.  *Schwarzenegger*, 374 F.3d at 802.  While often used

16  interchangeably, purposeful availment and purposeful direction are two distinct concepts.  *Id.*  A

17  purposeful availment analysis is most often used in connection with claims sounding in contract,

18  while a purposeful direction analysis is most often used in tort actions.  *Id.*

19          Here, Mr. Trinchitella alleges claims in both contract and tort, which include for

20  example, claims for breach of oral contract and negligent misrepresentation.  *Compl.* ¶¶ 46–61,

21  103–17.  All claims in Mr. Trinchitella's complaint arise out of the same "common nucleus of

22  operative facts," in that they stem from the correspondence between defendants and plaintiff and

23  the Subscription Agreement memorializing the terms of the $150,000 investment.  *See id.*; *Picot*,

24  780 F.3d at 1211.  To the extent Mr. Trinchitella is able to establish personal jurisdiction on one

25  claim, pendent personal jurisdiction maybe exercised over all other claims.  *See Picot*, 780 F.3d at

26  1211.

27

28

8

1    Focusing on Mr. Trinchitella's claim for breach of oral contract, the court

2  considers whether defendants purposefully availed themselves of the privilege of conducting

3  activities in California.  *See Schwarzenegger*, 374 F.3d at 802.

4    An exercise of specific jurisdiction is appropriate only if the nonresident defendant

5  has "purposefully avail[ed] itself of the privilege of conducting activities within the forum State,

6  thus invoking the benefits and protections of its laws."  *Burger King Corp. v. Rudzewicz*,

7  471 U.S. 462, 475 (1985) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).  In the Ninth

8  Circuit, the "purposeful availment" requirement is satisfied if the defendant has taken deliberate

9  action within the forum state or if she has created continuing or ongoing obligations to forum

10  residents.  *Ballard*, 65 F.3d at 1498 (citing *Hirsch v. Blue Cross, Blue Shield of Kan. City*,

11  800 F.2d 1474, 1478 (9th Cir. 1986)).  Under the rubric of personal availment, the Ninth Circuit

12  has held, "[i]t is not required that a defendant be physically present within, or have physical

13  contacts with, the forum, provided that his efforts 'are purposefully directed' toward forum

14  residents."  *Id.* (quoting *Burger King*, 471 U.S. at 476, and citing *Haisten v. Grass Valley Med.*

15  *Reimbursement Fund, Ltd.*, 784 F.2d 1392, 1399 (9th Cir. 1986) for proposition that out-of-state

16  act having effect within forum is sufficient to constitute purposeful availment).

17    In *Cubbage v. Merchent*, for example, the Ninth Circuit held an Arizona hospital

18  personally availed itself of California's jurisdiction for purposes of litigation of a malpractice

19  action.  744 F.2d 665, 669 (9th Cir. 1984).  The hospital argued its doctors were not California

20  residents, it was not licensed in California, and it did not treat the plaintiff in California, but the

21  Circuit found jurisdiction adhered because the hospital applied for and received reimbursement

22  from California's Medi-Cal program, and solicited California residents through a telephone

23  listing distributed to forum residents.  *Id.* at 668–69.  The hospital's conduct amounted to

24  "continuing efforts to provide services [to residents] in California."  *Id.* at 670.  This conduct was

25  sufficient to establish specific personal jurisdiction over the Arizona hospital.  *Id.* at 672.

26

27

28

1                        b)      <u>Analysis</u>

2                            (1)      ARP/Zarinegar/PRM

3          Here, in support of his breach of oral contract claim, Mr. Trinchitella alleges that

4 between January 2014 and  May 2015, APR, Mr. Zarinegar, and PRM engaged in a the stream of

5 correspondence to solicit investments though mail, email, and phone calls.  Compl.

6 ¶¶ 9, 19; Trinchitella Decl. Ex. 3 at 1.  In soliciting him, APR and Mr. Zarinegar promised Mr.

7 Trinchitella an investment in assets other than stock, a maximum return on the investment, and

8 reimbursement of the investment upon dissatisfaction.  Compl. ¶¶ 12–13.  PRM also

9 communicated with Mr. Trinchitella through a solicitation letter on PRM letterhead, a

10 Subscription Agreement signed by Mr. Zarinegar on behalf of PRM, and a stock conversion

11 ballot with instructions to return the ballot to Mr. Zarinegar, who held himself out as a manager of

12 PRM.  Trinchitella Decl. Ex 5 at 1–6.  At hearing, defendants conceded that PRM acted on ARP's

13 behalf when it signed the Subscription Agreement.  Mr. Trinchitella has established that

14 continuous communications between himself and ARP, PRM, and Mr. Zarinegar amounted to

15 "continuing efforts to provide services" to him in California, and has thereby established APR,

16 Mr. Zarinegar, and PRM purposefully availed themselves of the privilege of conducting activities

17 in California.  *See Schwarzenegger*, 374 F.3d at 802; *Cubbage*, 744 F.2d at 672.

18                            (2)      AHIT

19          Mr. Trinchitella does not sufficiently allege, however, that AHIT purposefully

20 availed itself of California as a forum.  The complaint alleges ARP, Mr. Zarinegar, and ARP

21 engaged in intentional acts of soliciting and corresponding with Mr. Trinchitella, but does not

22 allege any intentional acts by AHIT.   The complaint further alleges ARP, not AHIT, voted for

23 the restructuring plan and converted all membership interests into common stock of AHIT.

24 Compl. ¶ 24.  On the ballot sent to members to vote on the restructuring plan, Mr. Zarinegar, in

25 his capacity as manager of PRM, stated "Performance Realty is of the opinion" that the stock

26 conversion is the best solution.  Trinchitella Decl. Ex. 5 at 3.  Additionally, the Subscription

27 Agreement makes no mention of AHIT.  *See generally* Compl. Ex. A.  In sum, there are no

28

1    allegations that AHIT ever solicited Mr. Trinchitella or otherwise corresponded with him about

2    an investment.

3          Mr. Trinchitella contends AHIT should be subject to the court's personal

4    jurisdiction because it has "several dozen shareholders who reside in California."  Opp'n at 13.

5    In this respect, Mr. Trinchitella asks the court to assume AHIT, which gained shareholders when

6    ARP's members' units converted into AHIT shares, intentionally recruited those shareholders,

7    including Mr. Trinchitella.  Assuming for sake of argument that AHIT intentionally recruited the

8    shareholders in California, Mr. Trinchitella still does not adequately allege AHIT solicited or

9    contacted him, and no connection is made between AHIT's contacts with shareholders and any

10   claims in Mr. Trinchitella's complaint.  *See Love v. Assoc. Newspapers, Ltd.*, 611 F.3d 601, 609

11   (9th Cir. 2010) ("Here, [defendant] did contact people in California regarding the promotion that

12   would eventually lead to this law suit . . .[h]owever, those discussions did not enable or contribute

13   to the promotion activities that actually gave rise to the law suit.").  Mr. Trinchitella has not

14   established purposeful availment by AHIT on this ground.

15         Mr. Trinchitella further contends AHIT is an alter-ego of APR, PRM, and

16   Mr. Zarinegar.  Compl. ¶ 7.  Once jurisdiction is established over an entity, the plaintiff can

17   establish jurisdiction over related entities by demonstrating the two are "not really separate

18   entities."  This is a specific application of the alter-ego exception to the rule that corporations are

19   separate entities.  *See Doe v. Unocal Corp.*, 248 F.3d 915, 926 (9th Cir. 2001).  To show the alter-

20   ego exception applies, the plaintiff must make a prima facie showing "(1) that there is such unity

21   of interest and ownership that the separate personalities [of the two entities] no longer exist and

22   (2) that failure to disregard [their separate identities] would result in fraud or injustice."  *Id.*

23   (quoting *Am. Tel. & Tel. Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 591 (9th Cir. 1996)).

24   The first prong of this test has alternately been stated as requiring that the parent control the

25   subsidiary "to such a degree as to render the latter the mere instrumentality of the former."  *Id.*

26   (citing *Calvert v. Huckins*, 875 F. Supp. 674, 678 (E.D. Cal. 1995)).

27         Here, Mr. Trinchitella alleges the following: "the [d]efendants have caused and

28   allowed the commingling of funds and other assets of the entities and individuals, the use of the

11

1   same employees, and use of the entities as a mere shell or conduit for the affairs of the other

2   individual [d]efendants." Compl. ¶ 7. This statement, without more, amounts to a "conclusory

3   claim[]" or "legal conclusion[]" that the court need not take as true for purposes of examining

4   jurisdiction. *See Elowson*, 2015 WL 2455695, at *3. To overcome defendants' motion, Mr.

5   Trinchitella must allege that at the time ARP, PRM, or Mr. Zarinegar engaged in allegedly

6   fraudulent acts, AHIT was the alter-ego to one or more of the defendants, and support these

7   allegations with sufficient factual matter to allow a reasonable inference as to AHIT's liability.

8   Mr. Trinchitella has not established AHIT is subject to the jurisdiction of the court. Defendants'

9   motion to dismiss AHIT is GRANTED, with leave to amend if possible, consistent with this order

10   and with Rule 11.

11        The court now proceeds to the second part of the specific jurisdiction test, whether

12   the claim arises out of or relates to the forum-related activities of defendants ARP, PRM and Mr.

13   Zarinegar.

14        3.   Forum-Related Conduct

15        Once the plaintiff establishes personal availment, he must show the claim arises

16   out of the defendants' forum-related activities. To satisfy this requirement, the plaintiff must

17   show the claim would not have arisen "but for" the defendants' contacts with the forum state.

18   *Ballard*, 65 F.3d at 1500.

19        Here, the claims giving rise to Mr. Trinchitella's complaint stem from ARP's,

20   PRM's, and Mr. Zarinegar's correspondence with him directed to California, the investment he

21   made from California, the Subscription Agreement he signed in California, and the alleged

22   misrepresentations made throughout the ordeal. *See generally* Compl. Taken together, the

23   allegations plausibly show Mr. Trinchitella would not have invested but for the correspondence

24   and alleged misrepresentations. Mr. Trinchitella has satisfied this prong.

25        4.   Reasonableness

26        If a plaintiff satisfies the first two prongs of the specific jurisdiction test, the court

27   conducts a broad inquiry into the overall reasonableness and fairness of exercising personal

28   jurisdiction. *Ballard*, 65 F.3d at 1500–02. The court considers, among other things,

(1) the extent of a defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant in defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

*Panavision Int'l, LP*, 141 F.3d 1323 (citing *Burger King*, 471 U.S. at 476–77). Because the Ninth Circuit presumes a valid exercise of specific jurisdiction is reasonable, the defendant must present "a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Ballard*, 65 F.3d at 1500–02.

Because Mr. Trinchitella has satisfied the first two prongs of the jurisdiction test with regard to ARP, PRM, and Mr. Zarinegar, the burden shifts to them to present a "compelling case" of the unreasonableness of exercising personal jurisdiction. *Id.* The court proceeds to discuss the seven factors articulated in *Panavision International, LP*.

a)   Extent of Defendants' Purposeful Interjection

Defendants contend their "purposeful interjection" into the forum state's affairs was exceptionally limited. Mot. at 10. Mr. Trinchitella contends defendants' purposeful interjection was substantial because defendants continuously reached out to him in California, even after he made his initial investment. Opp'n at 16.

Although the court has already determined defendants purposefully directed activities towards California, the degree of interjection is nonetheless a factor in assessing the overall reasonableness of jurisdiction under this prong. *Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1132 (9th Cir. 2003). Here, defendants' contacts with California were fairly extensive. During the time period giving rise to Mr. Trinchitella's claims, defendants contacted him frequently through phone calls, emails, and direct mail. While it is true defendants do not conduct regular business, maintain offices, or own property in California, this does not preclude a finding of purposeful interjection. *Cf. Core–Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1488 (9th Cir. 1993) (defendants did not engage in purposeful interjection when only contact with forum state was writing article alleged to have targeted California resident) *with*

13

1    *Harris*, 328 F.3d at 1132 (finding purposeful interjection where defendants obtained twenty

2    percent of business in California, maintained extensive contact with plaintiff, and executed the

3    operative contract in forum state).  This factor favors plaintiff.

4                       b)        The Burden of Defending in the Forum

5                   Defendants argue litigating this case in California would be burdensome because

6    the operating agreement is governed by Arizona law.  Mot. at 10.  Mr. Trinchitella argues

7    "modern advances" in technology and the ease with which defendants have filed moving papers

8    in this court, demonstrate the absence of any burden they would suffer if required to litigate this

9    matter in California.  Opp'n at 16.

10                  Here, defendants took pains to ensure Mr. Trinchitella's claims would be governed

11   and resolved through Arizona law.  The Subscription Agreement contains an arbitration clause

12   that calls for all actions to be brought in Arizona.  Compl. Ex. A at 1–6; Mot. at 10.   While there

13   is no doubt litigating in this forum places some burden on defendants, it is not an overwhelming

14   burden, especially considering that "modern advances in communications and transportation have

15   significantly reduced the burden of litigating in another country," much less another state.

16   *Sinatra v. Nat'l Enquirer*, 854 F.2d 1191, 1199 (9th Cir. 1988).  Further, federal courts are

17   accustomed to applying the laws of other states in cases relying on diversity jurisdiction, *see X-

18   Cel Sales LLC v. A.O. Smith Corp.*, No. 11–1082, 2012 WL 273693, at *3 (D. Ariz. Jan. 31,

19   2012), and defendants do not argue this court lacks the capacity to apply and analyze Arizona

20   law.  Lastly, defendants do not face a language barrier.  *See Dole Food Co. v. Watts*, 303 F.3d

21   1104, 1115 (9th Cir. 2002) (fact that foreign defendants were fluent in English was mitigating

22   factor).  This factor favors plaintiff.

23                      c)        Extent of Conflict with Sovereignty of Defendants' State

24                  Neither party substantively addresses how adjudicating the case in this court would

25   align or conflict with the sovereignty of Arizona.  This factor carries less weight when the

26   litigation is against a citizen of a sister state, as opposed to a citizen of a foreign country.  *See

27   Core–Vent Corp.*, 11 F.3d at 1489.  However, because neither party has addressed this factor, the

28   court views it as neutral.

                                              14

1              d)      The Forum State's Interest in Adjudicating the Dispute

2              Defendants argue California has no special interest in adjudicating Mr.

3    Trinchitella's claims.  Mot. at 11.  Mr. Trinchitella argues California has a special interest in

4    protecting local investors.  Opp'n at 17.  "A state generally has a manifest interest in providing

5    its residents with a convenient forum for redressing injuries inflicted by out-of-state actors."

6    *Burger King*, 471 U.S. at 473.  Because Mr. Trinchitella is a California resident, this factor favors

7    him.

8              e)      The Most Efficient Judicial Resolution of the Controversy

9              This factor focuses on "where the witnesses and the evidence are likely to be

10   located."  *See Terracom v. Valley Nat'l Bank*, 49 F.3d 555, 561 (9th Cir. 1995).  Defendants

11   argue all witnesses and evidence are located in Arizona, but do not specify what evidence is

12   needed or which witnesses may be called.  This factor is neutral.

13             f)      The Importance of the Forum to the Plaintiff's Interest in
                      Convenient and Effective Relief
14

15             Defendants argue an Arizona court would be more effective and convenient

16   because it would naturally apply Arizona law and because all defendants are located in the state

17   of Arizona.  Mot. at 11.  Mr. Trinchitella argues California would be a more convenient and

18   effective forum because Mr. Trinchitella does not have the funds or the ability to pursue this

19   matter out of state, Opp'n at 17.  Mr. Trinchitella cites to his declaration in support of this

20   argument; the declaration avers that if made to litigate in Arizona, he would not be able to tend to

21   his ailing wife and would be forced to sell his house to avoid bankruptcy proceedings.

22   Trinchitella Decl. ¶¶ 4–5.

23             The significant inconvenience to Mr. Trinchitella tilts this factor in his favor.

24             g)      The Existence of an Alternative Forum

25             Defendants argue Arizona is the forum that would best resolve the claims at issue.

26   Mot. at 11.  Mr. Trinchitella argues his unique circumstances, including his inability to

27   successfully pursue this matter out of state, make California the only forum available to him.

28   Mot. at 17.

1   The plaintiff bears the burden of proving the unavailability of an alternative forum.

2   *Core-Vent Corp.*, 11 F.3d at 1490.  Mr. Trinchitella cannot carry his burden because an

3   alternative forum exists in Arizona.  This factor favors defendants.

4   ***********

5   Because defendants prevail on only one out of the seven fairness factors, they have

6   not shown this court's exercise of personal jurisdiction would be unreasonable.

7   h)   Summary

8   ARP, PRM, and Mr. Zarinegar are subject to the personal jurisdiction of this court

9   for the purposes of litigation of Mr. Trinchitella's claim for breach of oral contract.  Because Mr.

10   Trinchitella's other claims arise from the same "common nucleus of operative facts" as the oral

11   breach of contract claim, Mr. Trinchitella has adequately alleged facts sufficient to subject ARP,

12   PRM, and Mr. Zarinegar to the personal jurisdiction of this court as to the other claims.  *Picot*,

13   780 F.3d at 1211.  Mr. Trinchitella has not adequately alleged, however, that AHIT is subject to

14   the personal jurisdiction of this court.  The court dismisses Mr. Trinchitella's claim against AHIT,

15   with leave to amend in the event Mr. Trinchitella can satisfy the alter-ego exception.

16   B.   Venue

17   1.   Improper Venue

18   Defendants argue even if jurisdiction adheres, venue is improper in California and

19   the case should be transferred to an Arizona district court.  Mot. at 15.  Mr. Trinchitella argues

20   this district is the proper venue for his claims.  Opp'n at 18 .

21   Section 1391 of Title 28 of the United States Code governs the venue

22   determination for all civil actions brought in the district courts of the United States.  Under

23   § 1391(b), a civil action may be brought in: (1) a judicial district in which any defendant resides,

24   if all defendants are residents of the State in which the district is located; (2) a judicial district in

25   which a substantial part of the events or omissions giving rise to the claim occurred, or a

26   substantial part of property that is the subject of the action is situated; or (3) any judicial district

27   in which any defendant is subject to the court's personal jurisdiction with respect to such action if

28   there is no district in which an action may otherwise be brought as provided  in this section.

16

1   28 U.S.C. § 1391(b).  The plaintiff has the burden of establishing proper venue.  *Piedmont Label*

2   *Co. v. Sun Garden Packing Co.*, 598 F.2d 491, 496 (9th Cir. 1979).

3           Here, the first and third factors do not apply because defendants are not residents

4   of California and Arizona provides another district in which to bring this action.  Accordingly, the

5   court will determine whether jurisdiction exists under § 1391(b)(2).  Defendants argue Mr.

6   Trinchitella has alleged no facts suggesting that any substantial events accrued in California.

7   Mot. at 16.  Mr. Trinchitella argues venue is proper because his economic losses occurred in this

8   district.  Opp'n at 19.

9           The court concludes venue is proper in this district.  The contract giving rise to the

10  action was signed and executed in California, *see Vitria Tech., Inc. v. Cincinnati Ins. Co.*,

11  No. 5–01951, 2005 WL 2431192, at *3 (N.D. Cal. Sept. 30, 2005), the calls soliciting Mr.

12  Trinchitella's investment were directed to him in California, *see United States v. Corona*, 34 F.3d

13  876, 879 (9th Cir. 1994), at least one letter soliciting investments was sent to Mr. Trinchitella in

14  California, *see Maloon v. Schwartz, Zweban & Slingbaum, L.L.P.*, 399 F. Supp. 2d 1108, 1110

15  (D. Haw. 2005), and the letters informing Mr. Trinchitella of his investment losses were sent to

16  his home in California, *see id.*  Further, Mr. Trinchitella's economic loss, although stemming

17  from defendants' conduct from Arizona, occurred in California.  *Id.*  Venue is properly laid in this

18  district.

19                    2.      Transfer of Venue

20          Defendants alternately wish to transfer venue for convenience, arguing all

21  defendants, witnesses, and evidence are in Arizona.  Mot. at 16.  Mr. Trinchitella declines to

22  address defendants' argument, contending "no discussion concerning the transfer of venue in this

23  matter is needed, nor is it warranted."  Opp'n at 18 n.4.

24          Where venue is proper, a district court has discretion to transfer an action to

25  another district "[f]or the convenience of the parties and witnesses, in the interest of justice."

26  28 U.S.C. § 1404(a).   To make this determination, the Ninth Circuit has suggested a non-

27  exclusive list of wide-ranging public and private factors, including

28

                                        17

1

2

3

4

5

6

> (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling nonparty witnesses, . . . (8) the ease of access to sources of proof, . . . [(9)]the presence of a forum selection clause, if any, . . . [and (10)] the relevant public policy of the forum state, if any.

7    *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498–99 (9th Cir. 2000).  The weighing of these

8    factors is left to the court's discretion.  *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d

9    270, 279 (9th Cir. 1979).

10          The convenience of witnesses is often the most important factor in determining

11   whether a transfer under § 1404(a) is appropriate.  *See, e.g., Denver & Rio Grande W. Ry. Co. v.*

12   *Bhd. of R.R. Trainmen*, 387 U.S. 556, 560 (1967) ("[V]enue is primarily a matter of convenience

13   of litigants and witnesses."); *A.J. Indus. v. U.S. Dist. Court*, 503 F.2d 384, 386–87 (9th Cir. 1974)

14   (discussing importance and history of convenience of witnesses in evaluating § 1404(a) transfer).

15   To demonstrate inconvenience to witnesses, the moving party should produce information

16   regarding the identity and location of the witnesses, the content of their testimony, and why such

17   testimony is relevant to the action.  *A.J. Indus.*, 503 F.2d at 386-87.  A court should consider "not

18   only the number of witnesses located in the respective districts, but also the nature and quality of

19   their testimony in relationship to the issues in the case."  *Kannar v. Alticor, Inc.*, No. 08–5505,

20   2009 WL 975426, at *2 (N.D. Cal. Apr. 9, 2009).  The convenience of non-party witnesses is a

21   more important factor than the convenience of the parties.  *Rosholm v. Byb Brands, Inc*, No. 15–

22   1738, 2016 WL 1445592, at *3 (C.D. Cal. Feb. 22, 2016).

23          Here, defendants argue the court should transfer this case because "there are four

24   [d]efendants in Arizona and one [p]laintiff in California."  Mot. at 16.  Additionally, defendants

25   argue in conclusory fashion that "all . . . witnesses . . . reside in Arizona."  *Id*.  That defendants

26   may serve as witnesses does not by itself justify a transfer.  *See Rosholm*, 2016 WL 1445592, at

27   *3.  Further, defendants do not identify other witnesses, produce information about their

28

18

1   testimony, or explain why these witnesses and their testimony are relevant to Mr. Trinchitella's

2   case.

3           Defendants' motion to transfer venue is DENIED.

4       C.    Arbitration Clause

5           Defendants ask the court to compel arbitration of plaintiff's claims against ARP

6   and stay the remainder of the case pending arbitration.  Mot. at 16.  Mr. Trinchitella argues

7   arbitration should not occur because the arbitration agreement with ARP is cost-prohibitive and

8   thereby unconscionable.  Opp'n at 21.

9           1.    Choice of Law Provision

10          Before deciding whether the agreement is unconscionable, the court first identifies

11  the governing law.  The parties agree Arizona law governs the Subscription Agreement, including

12  the arbitration clause.  Mot. at 18 n.1; Opp'n at 21 n.6.

13          Where, as here, an arbitration agreement contains a choice-of-law clause, a court

14  must decide whether to enforce the law chosen by the parties based on the conflict-of-law rules of

15  the forum state.  *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941).

16          Under California's conflict-of-laws framework, a court must first determine

17  "(1) whether the chosen state has a substantial relationship to the parties or their transaction, or

18  (2) whether there is any other reasonable basis for the parties' choice of law." *Nedlloyd Lines*

19  *B.V. v. Sup. Court* (*Nedlloyd*), 3 Cal. 4th 459, 466 (1992).   If neither of these tests is met, the

20  court need not enforce the parties' choice of law.  *Id.*  If either test is met, "the court must next

21  determine whether the chosen state's law is contrary to a fundamental policy of California." *Id.*

22          Here, there is a substantial relationship between the chosen state and the parties'

23  arbitration agreement.  Defendants are located in Arizona, and payments under this agreement

24  were sent to defendants in Arizona.  *See Peleg v. Neiman Marcus Grp., Inc.*, 204 Cal. App. 4th

25  1425, 1446–47 (2012) (applying Texas law where one of the contracting parties had headquarters

26  in Texas); Restatement (Second) of Conflict of Laws § 187 (recognizing that a "substantial

27  relationship" with the chosen state exists where "one of the parties is domiciled or has his

28  principal place of business" there).  Because a "substantial relationship" exists, the court

1   considers "whether the chosen state's law is contrary to a fundamental policy of California."

2   *Hoffman v. Citibank (S. Dakota), N.A.*, 546 F.3d 1078, 1082 (9th Cir. 2008) (internal quotations

3   omitted) (analyzing state law).  Because Arizona courts look to California law when interpreting

4   issues of unconscionability, *see Cooper v. QC Fin. Servs., Inc.*, 503 F. Supp. 2d 1266, 1285-86

5   (D. Ariz. 2007), Arizona law is not contrary to a fundamental policy of California.  Arizona law

6   properly governs the question of unconscionability.

7             2.      Unconscionability

8             Under Arizona law, it is well-established that unconscionability is a generally

9   applicable contract defense which may render an arbitration provision unenforceable.  *Effio v.*

10  *FedEx Ground Pkg.*, 2009 WL 775408, * 3 (D. Ariz. Mar. 20, 2009).  Plaintiffs, however, "have a

11  high bar to meet in demonstrating that an arbitration agreement is unconscionable."  *Id.*

12            There are two types of contractual unconscionability: substantive and procedural.

13  *Nelson v. Rice*, 198 Ariz. 563, 567 (2000).  Procedural unconscionability addresses the fairness of

14  the bargaining process, which "is concerned with 'unfair surprise,' fine print clauses, mistakes or

15  ignorance of important facts or other things that mean bargaining did not proceed as it should."

16  *Maxwell v. Fid. Fin. Servs., Inc.*, 184 Ariz. 82, 88–89 (1995).  In contrast, substantive

17  unconscionability addresses the fairness of the terms of the contract itself.  *Id.*  A contract may be

18  substantively unconscionable when the terms of the contract are so one-sided as to be overly

19  oppressive or unduly harsh to one of the parties.  *Harrington v. Pulte Home Corp.*, 211 Ariz. 241,

20  252 (2005).  Here, Mr. Trinchitella argues only that the arbitration agreement is substantively

21  unconscionable.  Opp'n at 21.

22            An arbitration agreement may be substantively unconscionable if the fees and

23  costs to arbitrate are so excessive as to "deny a potential litigant the opportunity to vindicate his

24  or her rights."  *Harrington*, 211 Ariz. at 252; *see also Green Tree Fin. Corp. Ala. v. Randolph*

25  (*Randolph*), 531 U.S. 79, 81 (2000) (holding excessive arbitration costs may preclude litigants

26  from effectively vindicating their rights).  The party seeking to invalidate an arbitration

27  agreement on such grounds has the burden of proving that arbitration would be prohibitively

28  expensive.  *Harrington*, 211 Ariz. at 252; *Randolph*, 531 U.S. at 81.  Whether arbitration is

1    prohibitively expensive is a question of fact that depends on the unique circumstances of each

2    case.  *See Harrington*, 211 Ariz. at 252 (explaining "the Supreme Court adopted a case-by-case

3    approach to determining whether fees imposed under an arbitration agreement deny a potential

4    litigant the opportunity to vindicate his or her rights") (citing *Randolph*, 531 U.S. at 92).

5            In determining whether arbitration costs are prohibitively expensive, courts have

6    considered several factors.  First, the party seeking to invalidate the arbitration agreement must

7    present evidence concerning the costs to arbitrate.  *Id*.  This evidence cannot be speculative; it

8    must be based on specific facts showing with reasonable certainty the likely costs of arbitration.

9    *Id.*

10           Second, a party must make a specific, individualized showing as to why he or she

11   would be financially unable to bear the costs of arbitration.  *Id.* at 253.  This evidence must

12   consist of more than conclusory allegations that a person is unable to pay the costs of arbitration.

13   *Id.*  Rather, a party must show that based on his specific income and assets, he is unable to pay the

14   likely arbitration costs.  *Id.*; *Clark v. Renaissance W., LLC*, 232 Ariz. 510, 513 (Ct. App. 2013).

15           Third, a court must consider whether the arbitration agreement or the applicable

16   arbitration rules referenced in the arbitration agreement permit a party to waive or reduce the

17   costs of arbitration based on financial hardship.  *Clark*, 232 Ariz. at 513 (holding arbitration

18   agreement was not substantively unconscionable because, in part, agreement provided any claim

19   or dispute would be resolved under American Arbitration Rules (AAA), and applicable AAA

20   rules provided for waiver or reduction in arbitration fees based on "extreme hardship"); *Jones v.*

21   *Gen. Motors Corp.*, 640 F. Supp. 2d 1124, 1134 (D. Ariz. 2009) (finding arbitration fee not

22   substantively unconscionable under Arizona law in part because arbitration rules referenced in

23   arbitration agreement provided for waiver and deferral of fees based on financial hardship).

24           Here, Mr. Trinchitella contends arbitration would be prohibitively expensive,

25   Opp'n at 21, arguing arbitrators in Arizona charge between $300 and $475 per hour, *id*. at 22.  In

26   support of his argument, Mr. Trinchitella states he is seventy-four years old and retired, lives off a

27   "fixed income[,] and do[es] not have any liquid financial resources such as savings or stock."

28   Trinchitella Decl. ¶ 4; Opp'n at 22.  Mr. Trinchitella avers that if he incurred the arbitration costs

1   required by the Subscription Agreement, he would have to sell his house within months to avoid

2   bankruptcy.  Trinchitella Decl. ¶ 4.

3           Mr. Trinchitella does not make the "specific [] individualized showing"

4   establishing he would be unable to bear the costs of any arbitration.  *See Clark*, 232 Ariz. at 513.

5   Mr. Trinchitella's affidavit and arguments present only conclusory statements and nothing

6   specifically showing his financial situation, such as his lack of assets or liquid financial resources.

7   In short, Mr. Trinchitella does not show why arbitration costs would be a hardship, let alone a

8   prohibitive hardship as required by *Harrington* or *Clark*.  *Harrington*, 211 Ariz. at 252; *Clark*,

9   232 Ariz. at 513.  The arbitration clause here is not substantively unconscionable.  *Harrington*,

10  211 Ariz. at 253.

11          Defendants' motion to compel arbitration between ARP and Mr. Trinchitella is

12  GRANTED.

13          D.      Motion to Stay

14          Because the arbitration agreement is enforceable between ARP and

15  Mr. Trinchitella, defendants argue the court should stay the remainder of the case pending

16  arbitration.  Mot. at 19.  Mr. Trinchitella does not address this aspect of defendants' motion.

17          With its inherent power to control its own docket and calendar, a trial court has

18  discretion to stay an action pending arbitration.  *Mediterranean Enters., Inc. v. Ssangyong Corp.*,

19  708 F.2d 1458, 1465 (9th Cir. 1983).

20          [A] trial court may, with propriety, find it is efficient for its own
            docket and the fairest course for the parties to enter a stay of an
21          action before it, pending resolution of independent proceedings
            which bear upon the case. This rule applies whether the separate
22          proceedings are judicial, administrative, or arbitral in character, and
            does not require that the issues in such proceedings are necessarily
23          controlling of the action before the court.

24  *Id.* (citing *Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 862 (9th Cir. 1979)); *see also*

25  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 20 n. 22 (1983) ("In some

26  cases, of course, it may be advisable to stay litigation among the non-arbitrating parties pending

27  the outcome of the arbitration.  That decision is one left to the district court . . . as a matter of its

28  discretion to control its docket.").  "In deciding whether to stay non-arbitrable claims, a court

22

1    considers economy and efficiency, the similarity of the issues of law and fact to those that will be

2    considered during arbitration, and the potential for inconsistent findings absent a stay."  McLeod

3    v. Ford Motor Co., No. 04–1255, 2005 WL 3763354, at *2 (C.D. Cal. Apr. 14, 2005) (internal

4    citations, quotations, brackets, and ellipses omitted); see also United States v. Neumann

5    Caribbean Int'l, Ltd., 750 F.2d 1422, 1427 (9th Cir. 1985) (staying all proceedings in case,

6    including non-arbitrable third party complaint pending arbitration, for reasons of "economy and

7    efficiency").

8              Here, the court has determined a valid agreement to arbitrate exists.  The

9    arbitration agreement provides, "[a]ny controversy, claim, or dispute arising out of or related to

10   this Agreement will be resolved through binding arbitration."  Compl. Ex. A at 14.  Mr.

11   Trinchitella's claims against ARP, including his claims for contractual fraud, intentional

12   misrepresentation, and breach of the written contract, arise out of or are related to the agreement,

13   which memorialized and discussed the terms of his $150,000 investment.  Id.

14             The court concludes a stay is warranted as to Mr. Trinchitella's other claims

15   against PRM and Mr. Zarinegar.  Mr. Trinchitella asserts the same claims against all defendants

16   based on the same law and same set of facts.  In light of the similarity of the issues of law and fact

17   among each of Mr. Trinchitella's claims and the possibility of inconsistent rulings if the entire

18   action is not stayed, the interests of economy and efficiency favor staying this entire action.

19   Neumann Caribbean Int'l, Ltd., 750 F.2d at 1427.  Defendants' motion to stay the case pending

20   arbitration is GRANTED.

21   IV.    CONCLUSION/ LEAVE TO AMEND

22             At the outset, the court DISMISSES the Doe defendants in this case.  Additionally,

23   because PRM, ARP, and Mr. Zaringear are subject to this court's jurisdiction, their motion to

24   dismiss for lack of personal jurisdiction is DENIED.  Because AHIT is not subject to the

25   jurisdiction of this court, its motion to dismiss is GRANTED, but with leave to amend after the

26   stay imposed below is lifted.

27             Defendants' motion to dismiss for improper or inconvenient venue is DENIED.

28   Defendants' motion to compel arbitration between Mr. Trinchitella and ARP is GRANTED.

1    Defendants' motion to stay the case against PRM and Mr. Zarinegar pending arbitration is

2    GRANTED.  This case is STAYED pending arbitration of all claims against ARP.  The

3    defendants shall file a status report every sixty days describing the status of arbitration and

4    whether the stay may be lifted.  Defendants shall notify the court within seven days of the

5    completion of arbitration.  Plaintiff may file an amended complaint within fourteen (14) days of

6    the completion of arbitration.

7            This order resolves ECF No. 4-1.

8            IT IS SO ORDERED.

9    DATED:  July 27, 2016

10

11                          UNITED STATES DISTRICT JUDGE

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                    24