# UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONALD F. TRINCHITELLA, | Case No. 2:15-cv-02365-KJM-EFB |
| Plaintiff, | |
| v. | ORDER |
| AMERICAN REALTY PARTNERS, LLC, et al., | |
| Defendants. | |

Following arbitration with one defendant, plaintiff filed an amended complaint and moved to confirm the arbitration award. Defendants did not oppose the motion to confirm the arbitration award, which the court granted, but filed a motion to dismiss the first amended complaint. Plaintiff opposes the motion to dismiss. As explained below, the court GRANTS in part and DENIES in part the motion to dismiss.

I.     BACKGROUND

      A.     First Amended Complaint

Plaintiff Ronald F. Trinchitella is trustee of the Ronald F. and Billie Jean Trinchitella Family Trust. First Am. Compl. ("FAC"), ECF No. 35, ¶ 1; *see* ECF No. 34 (order granting parties' stipulated leave for plaintiff to file first amended complaint following completion of arbitration). In January 2014, Jack Combs, managing partner of defendant American Realty Partners, LLC ("ARP"), contacted Trinchitella about investing in ARP. *Id.* ¶ 11. Combs assured Trinchitella that a $150,000.00 investment would earn a minimum 8 percent annual return, with a total 15 to 18

1

percent projected return. *Id.* ¶ 12. Trinchitella later discussed his potential investment with defendant Sean Zarinegar, who is chairman of the board, CEO and President of defendant American Housing Income Trust, Inc. ("AHIT"), as well as manager of defendant Performance Realty Management, LLC ("PRM"), which, in turn, is manager of ARP. *Id.* ¶¶ 6, 13. Trinchitella also discussed the investment with Dan Sheriff, the senior account manager of ARP. *Id.* ¶¶ 6, 13; Prior Order, ECF No. 22, at 3[1] (discussing Sheriff's role). Combs, Zarinegar and Sheriff repeated the promise that Trinchitella would receive a return of at least 8 percent. FAC ¶ 13.

Before investing in ARP, Trinchitella explained to Combs, Zarinegar and Sheriff that he did not want to invest in stock. *Id.* ¶ 14. He was told an investment in ARP would not be an investment in stock. *Id.* Trinchitella also was told he would be able to withdraw his earnings once per year without compromising the capital contribution and, if he was unhappy with his investment, he could return his "units"[2] and have his $150,000 investment returned after one year of investing. *Id.* ¶¶ 14−15.

On February 12, 2014, relying on these representations, Trinchitella purchased 15 units of ARP for $150,000. *Id.* ¶ 16. Defendant PRM sent Trinchitella ARP's subscription agreement, which Trinchitella signed. *Id.*; Subscription Agreement, FAC Ex. A. Zarinegar, using the name "Sean Zar," signed the subscription agreement for ARP as PRM's manager. Ex. A at 15[3]; FAC ¶ 6 (alleging Zarinegar is "also known as Sean Zar (and possibly Bejahn Zarinegar)"). The language of the Agreement provides that it is "governed by and construed in accordance with the laws of the State of Arizona," it "can only be amended in a writing that is executed by the Company and the undersigned," and "the undersigned agrees to be bound and become a party to the Operating Agreement of [ARP]." *Id.* ¶¶ 17-19. Trinchitella never received a copy of ARP's operating agreement. *Id.* ¶ 19.

---

[1] All citations to the briefs refer to CM/ECF page numbers, not the briefs' internal pagination.

[2] Trinchitella refers to ARP "units" throughout his complaint without specifically defining that term.

[3] Because the complaint's exhibits are individually paginated but were not filed as individual CM/ECF documents, the court cites to each exhibit's individual pagination.

Sheriff, on behalf of ARP and/or PRM, called Trinchitella monthly to solicit further investments. *Id.* ¶ 21. Trinchitella declined, informing Sheriff he was waiting to receive his first return from his initial investment. *Id.* In early January 2015, in response to Trinchitella's inquiry, Sheriff told Trinchitella that ARP was earning a return of 18 percent to 22 percent. *Id.* When Trinchitella asked for proof of this rate of return, Sheriff stopped contacting him. *Id.* Trinchitella never received proof of this return rate. *Id.*

In a February 2015 phone call and in his responses to later correspondence, Zarinegar did not deny that Trinchitella had been told his investment would earn a yearly return of at least 8 percent. *Id.* ¶ 22. During that phone call, Zarinegar informed Trinchitella that his ARP units would be converted into stock as part of a restructuring plan. *Id.* ¶ 23. Trinchitella explained he had invested on the condition that his investment would not be in a stock. *Id.* He then requested return of his $150,000 investment with an 8 percent return. *Id.* Zarinegar told Trinchitella his investment would be returned in March 2015. *Id.* ¶ 24. Trinchitella sent a letter confirming this conversation on February 28, 2015. *Id.* ¶ 25.

On information and belief, Trinchitella alleges that in late 2014 or early 2015, ARP voted its majority and controlling interest in AHIT's predecessor to merge that predecessor with AHIT. *Id.* ¶ 4. AHIT was the surviving entity. *Id.* Also on information and belief, Trinchitella alleges that ARP had a special meeting on March 7, 2015 to obtain approval to restructure ARP to convert all membership interests into shares of common stock of AHIT. *Id.* ¶ 26. Trinchitella voted by proxy against the restructuring. *Id.* At some point in late 2014 or early 2015, ARP pursued a tax-free exchange of ARP units, including Trinchitella's units, with AHIT units, resulting in Trinchitella's holding pro rata shares of AHIT[4] rather than ARP units. *Id.* ¶ 4. Trinchitella thus alleges AHIT is the successor in liability to ARP, in addition to being liable for its own actions and omissions. *Id.*

/////

---

[4] Although not specifically stated, the court assumes Trinchitella alleges he held or holds pro rata shares of AHIT stock. *See* FAC ¶ 44 (alleging Trinchitella's ARP units "have been converted without his written consent into shares of common stock of AHIT with the intent of selling AHIT stock in the stock market . . . .").

3

Trinchitella spoke to Zarinegar in March, April and May of 2015, with Zarinegar assuring Trinchitella in their final discussion that Trinchitella's initial $150,000 investment would be returned by June 18, 2015. *Id.* ¶ 27. On April 7, 2015, Trinchitella received a Schedule K-1 dated February 16, 2015, showing a $36,156 loss and decrease in capital account. *Id.* ¶ 28. Defendants have not returned Trinchitella's initial investment or the promised 8 percent return. *Id.* ¶ 29.

In March 2017, after Trinchitella filed this suit, he alleges on information and belief that AHIT acquired IX Bioscience and, in May 2017, AHIT changed IX Bioscience's name to Corix Bioscience, Inc., making Corix the successor to both ARP and AHIT. *Id.* ¶¶ 4−5. Accordingly, Trinchitella alleges Corix is ARP and AHIT's successor in liability. *Id.* ¶ 5.

B. Procedural Background & Arbitration

1. Initial Complaint, Motion to Dismiss and Prior Order

Trinchitella sued ARP, PRM, AHIT and Zarinegar in state court on September 22, 2015, and defendants removed to this court on November 13, 2015. Compl., ECF No. 1 (notice of removal and complaint). ARP, PRM, AHIT and Zarinegar then moved to dismiss for lack of personal jurisdiction and improper venue; they moved in the alternative to compel arbitration of Trinchitella's claims against ARP and stay the balance of the case pending arbitration. Prior Mot., ECF No. 4-1. In bringing their motion to compel arbitration, defendants argued:

> The Subscription Agreement is only between Plaintiff and ARP and it is unclear what Plaintiff's basis is for even including the other Defendants in this case. The outcome of the Plaintiff's claims against ARP will significantly impact, if not dispose of, Plaintiff's claims against the other Defendants. It makes no sense to litigate this case with three peripheral Defendants that probably should not be parties anyway, while arbitrating the exact same issues, facts and claims between Plaintiff and ARP. To do so would be inefficient, unfair and prejudicial to PRM, AHIT and Zarinegar and most definitely creates the potential for inconsistent results.

Prior Mot. at 20.

Resolving defendants' motion to compel, the court found ARP, PRM and Zarinegar had purposefully availed themselves of the privilege of conducting activities in California and were subject to the court's jurisdiction. Prior Order at 10 (citations omitted); *see id.* (noting "defendants

4

conceded that PRM acted on ARP's behalf when it signed the Subscription Agreement"). Regarding AHIT, however, the court found Trinchitella had "not allege[d] any intentional acts by AHIT," "the Subscription Agreement makes no mention of AHIT," and Trinchitella's allegations that AHIT is an alter-ego of ARP, PRM and Zarinegar amounted to no more than legal conclusions, warranting dismissal of AHIT. *Id.* at 11−12. The court granted Trinchitella leave to amend, in the event he could sufficiently allege AHIT was the alter-ego of one or more of the defendants. *Id.* at 12. The court then granted defendants' motion to compel arbitration between ARP and Trinchitella. *Id.* at 19−22. Exercising its discretion, the court stayed the balance of claims against the remaining defendants, finding, "[i]n light of the similarity of the issues of law and fact among each of Mr. Trinchitella's claims and the possibility of inconsistent rulings if the entire action is not stayed, the interests of economy and efficiency favor staying this entire action." *Id.* at 23.

2. Arbitration of Trinchitella's Claims Against ARP

ARP and Trinchitella arbitrated Trinchitella's claims against ARP under the Commercial Rules of the American Arbitration Association, with the arbitrator holding an evidentiary hearing on November 14 and 15, 2017, and issuing an interim award on liability and damages on November 16, 2017, Interim Award, FAC Ex. B, with a final award issued December 28, 2017, Final Award, FAC Ex. B.[5] Although this court had compelled arbitration as to ARP only, it appears the arbitration began with PRM, AHIT and Zarinegar participating as well, as the arbitrator indicates the parties stipulated to dismissing PRM, AHIT and Zarinegar. Final Award at 1 n.1; *but see id.* at 2 (reducing Trinchitella's requested attorney's fees for his having pursued "unsuccessful judicial litigation against ARP in the face of a mandatory arbitration clause, and against others not bound by the arbitration clause"). Trinchitella, represented by counsel, attended the evidentiary hearing, as did ARP, which appeared through Zarinegar as its chief executive officer, with counsel present as well. Interim Award at 1. The parties offered 32 exhibits, all of
/////

---

[5] Exhibit B comprises both the Interim Award and Final Award but, as noted above, the documents are individually paginated and therefore the court cites them here as separate documents.

5

which were admitted. *Id.* Trinchitella, Sheriff, Combs and Zarinegar provided sworn testimony. *Id.* at 2.

Trinchitella and ARP arbitrated the following claims specifically: "(1) breach of oral contract; (2) promissory fraud; (3) Arizona Consumer Fraud statute, A.R.S. § 44-1521 et seq. [sic]; (4) intentional misrepresentation; (5) negligent misrepresentation; and (6) common law fraud."[6] *Id.* at 1−2. Following hearing, the arbitrator made the following findings, which the court provides with corresponding allegations in Trinchitella's first amended complaint:

> - Trinchitella "did not receive by mail the Operating Agreement . . . or the Private Placement Memorandum . . . before he executed the Subscription Agreement." Interim Award at 2 (citing arbitration Exhibits 4 and 5[7]); *see* FAC ¶ 19 ("Plaintiff has never received a copy of ARP's Operating Agreement.").

> - "Trinchitella informed ARP that he did not want to purchase any stock investment" and "[i]n telephone calls with Mr. Trinchitella, ARP either misrepresented the possibility that [Trinchitella's] ownership interest might be converted to an equity investment, or they [sic] failed to inform him that ARP intended to 'investigate the possibility of converting ARP to a real estate investment trust at some future time.'" Interim Award at 2−3 (quoting arbitration Exhibit 4 at 7); *see* FAC ¶¶ 14, 23, 31 (alleging plaintiff explained in "pre-investment conversations that he did not want to invest in stock" and later confirmed the Zarinegar that he did not wish to invest in stock), *id.* ¶¶ 23, 44 (alleging that despite pre-investment assurances Trinchitella would not be investing in stock, Zarinegar informed Trinchitella his investment was being converted to stock).

> - "ARP . . . sen[t] Mr. Trinchitella an email . . . and t[old] him over the telephone that he would receive an '8% preferred return,' which Mr. Trinchitella reasonably

---

[6] These claims mirror those Trinchitella brought in his initial complaint and now brings in his first amended complaint, with the exception of two claims: his claim for breach of written contract, which he withdrew from arbitration, *see* Interim Award at 2 n.1, and the Arizona Consumer Fraud claim, which is styled as "Consumer Fraud" without citation to a specific statute in both Trinchitella's initial complaint and his operative first amended complaint, Compl. ¶¶ 74−88, FAC ¶¶ 76−90.

[7] Trinchitella has not provided any of the arbitration exhibits cited in the Interim Award with the first amended complaint. Although defendants provide several exhibits in support of their motion to dismiss, including some documents the Interim Award appears to refer to, *see* ECF Nos. 41-2 − 41-4 (defendants' exhibits A−E), defendants provide the court with no basis for considering documents Trinchitella has not attached to the complaint in resolving this motion to dismiss. The court also notes that defendants appear to have included a potentially sensitive and/or privileged document that does not appear to be related to this case at ECF No. 41-3 at 94−127. As noted below, the court strikes this document from the docket.

understood to be a rate of return, when in fact, 'preferred return' was a term defined in ARP's Operating Agreement . . . with an entirely different meaning." Interim Award at 3; FAC ¶¶ 12−13, 22 (alleging Combs, Zarinegar and Sheriff falsely promised Trinchitella an 8 percent return).

- "ARP . . . misle[d] [Trinchitella] in at least one telephone call about his ability to demand the return of his principal after one year." Interim Award at 3; FAC ¶ 15 ("Plaintiff was told that if, after one year of investing, Plaintiff was not happy with his investment for any reason, he could return his units and receive back the $150,000 investment.").

Based on these findings, the arbitrator determined that ARP violated Arizona's consumer fraud statute and is liable to Trinchitella in the amount of $201,131.51. Interim Award at 3; *see* Final Award at 1. The arbitrator also found, under the parties' stipulation, their transaction would be rescinded and Trinchitella would return his investment to ARP. Interim Award at 3; *see id.* at 2 (noting, "The parties stipulated that should [Trinchitella] prevail, the transaction will be rescinded, and [Trinchitella] will return the investment").[8] The arbitrator dismissed all of Trinchitella's other claims and ARP's defenses. Interim Award at 3. Trinchitella then moved for fees and costs. *See* Final Award at 1. Noting Trinchitella's "pursuit of unsuccessful judicial litigation against ARP in the face of a mandatory arbitration clause, and against others not bound by the arbitration clause," the arbitrator reduced Trinchitella's requested amount by $22,821.97. *Id.* at 2. The arbitrator ultimately awarded Trinchitella $72,112.14 in attorneys' fees, $18,085.47 in non-AAA costs and $9,375.00 in AAA costs. *Id.*

C. First Amended Complaint

Following completion of the arbitration proceedings, Trinchitella moved to confirm the arbitration award, and the court has granted that motion. ECF No. 32 (motion to confirm); ECF No. 46 (order granting motion to confirm). The parties stipulated to Trinchitella's filing an amended complaint "to add a successor entity (Corix Bioscience, Inc., . . . which is the successor to AHIT . . .) and to amend the complaint to address the results of the binding arbitration between

---

[8] The effect of this language is unclear to the court, as there is no explanation as to how Trinchitella would return the ARP investment. Without clarification, the court is unable to determine whether Trinchitella is required to return his ARP "units," the AHIT shares his units were allegedly converted into despite his protests and which are, perhaps, now Corix stock, or the dollar value of the initial investment.

7

[Trinchitella] and ARP. . . ." ECF No. 33; *see* ECF No. 34 (order lifting stay and granting leave to file first amended complaint). Except for the breach of written contract claim, which he abandoned at arbitration, and his consumer fraud claim, which the arbitrator addressed under Arizona's consumer fraud statute, Trinchitella now brings against ARP, PRM, AHIT, Corix and Zarinegar the same claims he raised in his original complaint and arbitrated with ARP: breach of written contract, breach of oral contract, promissory fraud, consumer fraud, intentional misrepresentation, negligent misrepresentation and common law fraud. *See generally* FAC. Trinchitella seeks damages of "at least . . . the amount of the Arbitration Award" and "[e]ntry and enforcement of that judgment and Arbitration Award against all Defendants as successors in liability to, and alter egos of, ARP." *Id.* at 26.

II. LEGAL STANDARD

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." A court may dismiss "based on the lack of cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

Although a complaint need contain only "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), in order to survive a motion to dismiss this short and plain statement "must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint must include something more than "an unadorned, the-defendant-unlawfully-harmed-me accusation" or "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). Determining whether a complaint will survive a motion to dismiss for failure to state a claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Ultimately, the inquiry focuses on the interplay between the factual allegations of the complaint and the dispositive issues of law in the action. *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

8

In making this context-specific evaluation, this court must construe the complaint in the light most favorable to the plaintiff and accept as true the factual allegations of the complaint. *Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007). This rule does not apply to "a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986) *quoted in Twombly*, 550 U.S. at 555, nor to "allegations that contradict matters properly subject to judicial notice" or to material attached to or incorporated by reference into the complaint. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988–89 (9th Cir. 2001). A court's consideration of documents attached to a complaint or incorporated by reference or matter of judicial notice will not convert a motion to dismiss into a motion for summary judgment. *United States v. Ritchie*, 342 F.3d 903, 907–08 (9th Cir. 2003); *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995); *compare Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002) (noting that even though court may look beyond pleadings on motion to dismiss, generally court is limited to face of the complaint on 12(b)(6) motion).

III. DISCUSSION

Defendants ARP, PRM, Corix and Zarinegar[9] (collectively, "defendants" or "non-ARP defendants") argue Trinchitella's first amended complaint raises the same claims and seeks the same relief he previously pursued in arbitration against ARP, the non-ARP defendants' liability is entirely derivative of ARP's liability, and, accordingly, all claims in Trinchitella's first amended complaint are barred by res judicata. Defendants use "res judicata" to refer to claim preclusion, as opposed to issue preclusion. *See* Mot. at 12 (noting distinction between issue and claim preclusion and clarifying defendants assert only the latter here); *Vandenberg v. Superior Court*, 21 Cal. 4th 815, 828–29 (1999) (describing differences between claim and issue preclusion).[10] Trinchitella

---

[9] As discussed below, although named as a defendant in the first amended complaint, AHIT did not join the motion and no arguments were expressly presented on its behalf.

[10] Issue preclusion is inapplicable here, as the California Supreme Court has held "a private arbitration award, even if judicially confirmed, can have no collateral estoppel effect in favor of third persons unless the arbitral parties agreed, in the particular case, that such a consequence should apply." *Id.* at 834 (1999); *see Brinton v. Bankers Pension Servs., Inc.*, 76 Cal. App. 4th 550, 556–57 (1999) (noting, under *Vandenberg*, claim preclusion may apply where issue preclusion does not) (citing *Vandenberg*, 21 Cal. 4th at 824 n.2).

9

responds that the non-ARP defendants refused to participate in arbitration, that the non-ARP defendants are liable here "based on the acts and omissions they took, not just through ARP, but directly on their own (in the case of Mr. Zarinegar) and through their own representatives (in the case of PRM and AHIT)," and argues he must be permitted to establish each defendant's successive or alter ego liability. Opp'n, ECF No. 42. The court submitted the matter without oral argument and resolves it here.

      A.      <u>Claim Preclusion</u>

Defendants rely on both federal common law and California law in arguing claim preclusion applies while Trinchitella looks to California law alone for controlling principles. Neither party directly addresses the choice of law issue. Because this court, sitting in diversity, has confirmed the arbitration award and now determines the award's preclusive effect, the court must apply its forum state's law. *NTCH-WA, Inc. v. ZTE Corp.*, 921 F.3d 1175, 1180 (9th Cir. 2019) ("[F]ederal common law governs the claim-preclusive effect of a judgment rendered by a federal court sitting in diversity. But federal common law, in such circumstances, requires us to 'determine the preclusive effect of the prior [federal] decision by reference to the law of the state where the rendering federal diversity court sits.'") (internal citations and quotation marks omitted; alteration in original).

Under California law, "claim preclusion[] prevents relitigation of the same cause of action in a second suit between the same parties or parties in privity with them." *Cal Sierra Dev., Inc. v. George Reed, Inc.*, 14 Cal. App. 5th 663, 671 (2017), *as modified on denial of reh'g* (May 14, 2018), *review denied* (Aug. 8, 2018). Claim preclusion applies only if the following requirements are met:

> (1) the second lawsuit must involve the same "cause of action" as the first one, (2) there must have been a final judgment on the merits in the first lawsuit and (3) the party to be precluded must itself have been a party, or in privity with a party, to that first lawsuit.

*San Diego Police Officers' Ass'n v. San Diego City Employees' Ret. Sys.*, 568 F.3d 725, 734 (9th Cir. 2009) (applying California law).

1.   Same Cause of Action

Under California law, the court determines whether the prior and current proceedings raise the same cause of action "by focusing on the 'primary right' at stake: if two actions involve the same injury to the plaintiff and the same wrong by the defendant then the same primary right is at stake even if in the second suit the plaintiff pleads different theories of recovery, seeks different forms of relief and/or adds new facts supporting recovery." *Cal Sierra Dev., Inc.*, 14 Cal. App. 5th at 675–76 (internal quotation marks omitted) (quoting *Eichman v. Fotomat Corp.*, 147 Cal. App. 3d 1170, 1174 (1983)). This approach recognizes "only a single cause of action for the invasion of one primary right" where "the harm suffered is the significant factor." *Id.* (citations omitted).

As defendants note, Trinchitella in the first amended complaint attempts to rectify the same wrong already addressed in arbitration, with both actions turning on "the same investment, [a]lleged [p]romises, and alleged damages." Mot. at 9. Trinchitella does not dispute this point nor otherwise attempt to show that the primary right at stake here somehow differs from the primary right at issue in arbitration. With no dispute on this point, the court finds the same cause of action that was at issue in the arbitration is also at issue here.

2.   Final Judgment on the Merits

Although this court granted Trinchitella's unopposed motion to approve the arbitration award, as discussed further below, the court has not entered judgment against ARP. Defendants argue an arbitration award, even unconfirmed, constitutes a final judgment on the merits under both California and federal law. Mot. at 7 (citations omitted). Trinchitella does not address this element of claim preclusion, and thus appears to concede the point.

For purposes of this motion, where ARP was party to the arbitration and the non-ARP defendants contend they are in privity with ARP, the arbitration award, now confirmed, constitutes a final judgment on the merits. *See Bucur v. Ahmad*, 244 Cal. App. 4th 175, 189 (2016) (observing, as to same party in arbitration and successive case, "[f]or purposes of res judicata, an unconfirmed arbitration award is equivalent to a final judgment"); *Trollope v. Jeffries*, 55 Cal. App. 3d 816, 824 (Ct. App. 1976) (applying to arbitration award principle under which, "if a person

voluntarily acquiesces in or recognizes the validity of a judgment or decree, or otherwise takes a position inconsistent with the right of appeal therefrom, he thereby impliedly waives his right to have such judgment, order or decree reviewed by an appellate court"); *Cal Sierra Dev., Inc.*, 14 Cal. App. 5th at 678−79 (defendant in privity with party to arbitration "can assert the confirmed arbitration award as claim preclusion, even though the award was not reduced to a judgment).

3. Privity

Both the party asserting a claim preclusion defense and the party against whom the defense is asserted must have been the same party or its privy in the prior action. *DKN Holdings LLC v. Faerber*, 61 Cal. 4th 813, 824−25 (2015). "[P]rivity requires the sharing of 'an identity or community of interest,' with 'adequate representation' of that interest in the first suit, and circumstances such that the nonparty 'should reasonably have expected to be bound' by the first suit." *Id.* (quoting *Clemmer v. Hartford Ins. Co.*, 22 Cal. 3d 865, 875 (1978), *overruled on other grounds by Ryan v. Rosenfeld*, 3 Cal. 5th 124 (2017)). "Put another way, privity, 'as used in the context of res judicata or collateral estoppel, does not embrace relationships between persons or entities, but rather it deals with a person's relationship *to the subject matter of the litigation*.'" *Castillo v. Glenair, Inc.*, 23 Cal. App. 5th 262, 277 (Ct. App. 2018) (emphasis in original) (quoting *Cal Sierra Dev., Inc.*, 14 Cal. App. 5th at 674)).

a. ARP

Although not expressly conceded by Trinchitella, it is undisputed that ARP was the same party in the arbitration that is named as ARP in this case. Accordingly, claim preclusion applies to this extent. The court GRANTS the motion as to ARP.

b. PRM & Zarinegar[11]

PRM and Zarinegar contend their liability in this action is merely derivative of ARP's liability and "their relationships are close enough that, for purposes of res judicata, they should be considered the same party." Mot. at 11; *see Cal Sierra Dev., Inc.*, 14 Cal. App. 5th at

---

[11] As noted above and discussed further below, defendants do not specifically argue Trinchitella's claims against AHIT are precluded. *See* Mot. at 6−7 (arguing claims against ARP are precluded); *id.* at 8−12 (arguing claims against Corix, PRM and Zarinegar are precluded).

673 ("[D]erivative liability establishes privity."). Specifically, defendants argue PRM is merely ARP's "manager" with "no claims made directly against it" in arbitration or in the current proceedings and Zarinegar is simply "an agent of ARP." *Id.* at 11; *but see* FAC ¶ 6 (alleging on information and belief that Zarinegar was AHIT's "Chairman of the Board, CEO and President" and ARP's manager); Interim Award at 1 (identifying Zarinegar's appearance at arbitration as ARP's Chief Executive Officer); Subscription Agreement at 15 (ARP subscription agreement signed by "Sean Zar"[12] as "Manager" of PRM).

Trinchitella argues these defendants' liability is not derivative of ARP's because the defendants acted "directly on their own (in the case of Mr. Zarinegar) and through their own representatives (in the case of PRM and AHIT)." Opp'n at 6. In the operative complaint, Trinchitella alleges that both ARP and PRM "actively recruited investors such as Plaintiff, by [them]sel[ves] and through [one another] . . . ." FAC ¶¶ 2−3. Sheriff, acting either on behalf of ARP and PRM, or both, called Trinchitella monthly to solicit further investments. *Id.* ¶ 21. It was PRM, not ARP, that sent Trinchitella the subscription agreement containing the arbitration agreement this court later enforced as to ARP, *id.* ¶ 16, and that agreement allegedly was signed by Zarinegar as manager of PRM for ARP, Subscription Agreement at 15.

The various defendants' roles in this case are far from clear, and defendants, confined to the pleadings here, offer little in the way of clarification. In any event, defendants have not established that their liability is entirely derivative of ARP's, and none of the cases they rely on establishes as much. For example, Zarinegar has not shown he is an "agent of ARP" as the individual defendants in the case of *Sartor* were agents and employees of the architectural and engineering services corporation against which the plaintiffs in that case had previously arbitrated their claims. *See* Mot. at 8, 11 (citing *Sartor v. Superior Court*, 136 Cal. App. 3d 322, 328 (Ct. App. 1982) for proposition a corporation acts only through its agents and its agents are thus absolved of derivative liability when corporation is absolved of liability); *see also Sartor*, 136 Cal. App. 3d at 328−29 (noting arbitrator submitted declaration as to derivative nature of liability,

---

[12] Trinchitella alleges Zarinegar is also known as Sean Zar. FAC ¶ 6.

13

stating "the individuals had committed no fraud, and on that basis I found that [the corporation] was not liable for fraud").

While Zarinegar may be an agent of ARP as its Chief Executive Officer, *see* Interim Award at 1, he also held himself out as the manager of PRM, Subscription Agreement at 15, and allegedly held multiple other roles for the other entity defendants, leaving the scope of his agency status in this case and among its defendants unclear. Further, as noted, PRM is a corporate entity. Defendants' assertion that PRM was ARP's "manager," without more, does not establish PRM's purely derivative liability. *See* Mot. at 11. In short, at this stage and on this record, the court cannot accept defendants' argument that "their relationships are close enough that, for purposes of res judicata, they should be considered the same party" with no substantive proof of those relationships. *See* Mot. at 11

Moreover, the parties neglect to address other authority that may be relevant here. For example, the California Supreme Court has held that privity is not established merely because parties are in a business partnership, are cosigners to an agreement, or because they may be subject to joint and several liability. *See DKN Holdings LLC*, 61 Cal. 4th at 825−26. In both breach of contract and tort claims, joint and several obligors and concurrent tortfeasors are independently liable "although all have contributed to the same loss." *Id.* at 828; *id.* at 821 n.7; *see also Gackstetter v. Frawley*, 135 Cal. App. 4th 1257, 1272–73 & n.13 (2006) ("'Joint tortfeasors' have been referred to as 'two or more persons who are liable to the same person for the same harm'" and "If the independent tortious conduct of two or more persons is a legal cause of an indivisible injury, each defendant is jointly and severally liable for the economic damages portion of the recoverable damages. . . ." (quoting Restatement (Second) of Torts § 886A, cmt. 1(b); Restatement (Third)).

If these defendants are to prove their liability is purely derivative of ARP's or otherwise establish that they are in privity with ARP, they will need to do so in a later dispositive motion or at trial. The motion is DENIED as to PRM and Zarinegar.

        c.    Corix

Defendants also argue Corix's liability is purely derivative of ARP's liability. Mot. at 8, 11. As defendants explain, "ARP is a subsidiary of Corix" that "had no involvement with

Plaintiff's investment in ARP" and "had no relationship with ARP until over a year after Plaintiff invested in ARP." Mot. at 11. Trinchitella concedes that "Corix is the only Defendant that is not alleged to have committed [the] same acts and omissions [at issue here] on its own behalf, and [Corix's] liability is based on both derivative liability and its status as the alter ego of the other Defendants (not just ARP)." Opp'n at 6; *see id.* at 11 (arguing Corix liable "as the successor responsible for ARP's liability"). Consistent with this concession, in his first amended complaint, Trinchitella alleges that AHIT became the successor in liability to ARP at some point after late 2014 or early 2015, then AHIT acquired IX Bioscience in March 2017 and changed AHIT's name to Corix in May 2017, making Corix the successor in liability to both ARP and AHIT with respect to the 2017 arbitration award. FAC ¶¶ 4−5.

In other words, Trinchitella concedes that he does not intend to pursue the claims litigated in arbitration against Corix as a direct actor, but instead intends to establish Corix's liability as an alter ego of ARP and AHIT and as their successor in interest. "The most common form of privity is succession in interest. One who succeeds to the interests of a party in the property or other subject of the action, after its commencement, is bound by the judgment with respect to those interests in the same manner as if he or she were a party." 7 Witkin, Cal. Proc. 5th Judgm. § 460 (2008) (citations omitted); *Neilson v. Union Bank of California, N.A.*, 290 F. Supp. 2d 1101, 1149 (C.D. Cal. 2003). Based on his own allegations and arguments, then, Trinchitella effectively concedes that Corix is in privity with ARP. He is therefore precluded from relitigating claims against ARP by litigating the same claims against Corix as ARP's successor. The court GRANTS the motion as to Corix to this narrow extent.

Notably, however, Trinchitella has not yet proven that Corix is in fact ARP or any other defendant's successor, and he is not precluded from making such a showing in this case, should he choose to amend his complaint to do so. Moreover, because no other defendant has shown it is in privity with ARP, Trinchitella may still attempt to show that Corix is another non-ARP defendant's successor. *See* FAC ¶ 5 (alleging Corix is successor in liability to AHIT).

/////

/////

B. Leave to Amend

Trinchitella seeks leave "to set up the claims necessary to pursue and prove the Defendants' liability for th[e] [arbitration] award as alter egos [and successors] of ARP." Opp'n at 11; *see* Ehlers' Decl., ECF No. 42-1, ¶ 5 ("If and when the arbitration award is confirmed, Plaintiff will be able to amend the Complaint to pursue those Defendants as alter egos liable for the award (and to segregate out the claims in addition to those addressed at the arbitration that remain to be decided separately against the other Defendants).").

Defendants did not respond to this request, which the court GRANTS to the extent any amendment is consistent with the balance of this order.

C. Status of AHIT

As noted above, the court granted AHIT's motion to dismiss Trinchitella's original complaint, but granted Trinchitella leave to amend his allegations as to AHIT. Prior Order at 12. Trinchitella has since amended his complaint and includes AHIT as a defendant. *See* FAC. All defendants in this action share the same counsel, yet only ARP, PRM and Zarinegar moved to dismiss Trinchitella's first amended complaint.

In short, AHIT has not responded to the first amended complaint. Accordingly, within 14 days of this order, Trinchitella is ORDERED to request entry of default as to AHIT or file a status report indicating his plans otherwise to prosecute this case against AHIT. *See* Fed. R. Civ. P. 55.

D. Entry of Judgment as to ARP

There is authority for the position that a court granting a motion to confirm an arbitration award must also enter judgment in accordance with the arbitration award. 9 U.S.C. § 13 ("The party moving for an order confirming, modifying, or correcting an award shall, at the time such order is filed with the clerk for the entry of judgment thereon, also file the following papers with the clerk . . . ."); *Cal Sierra Dev., Inc.*, 14 Cal. App. 5th at 678 n.5 (noting, under California law, "judgment should have been entered on the order [confirming arbitration award]") (citations omitted); *but see Didio v. Jones*, No. CV 13-4949 PSG, 2016 WL 6674992, at *3−4 (C.D. Cal. Feb. 3, 2016) (noting 9 U.S.C. § 9 does not require entry of judgment and declining to enter

judgment, after reviewing Rule 54(b), where unarbitrated issues were pending and ultimate disposition was uncertain).

Here, the court has confirmed the award but has not entered judgment as to ARP. Because the arbitration award is final as to ARP and no further action in this case will change that result, the court identifies only one barrier to entry of judgment against ARP: Trinchitella seeks interest but has not supported his request. *See* ECF No. 32 at 5 (seeking judgment against ARP "in the full amount of the award as of December 28, 2017 [the date of the Final Award], with interest accruing thereon at the maximum legal rate until paid in full."). The request therefore is inadequate. The subscription agreement Trinchitella and ARP entered into contains a choice of law provision, *see* Subscription Agreement at 14, but Trinchitella does not indicate whether the court should look to California, Arizona or federal law in determining whether prejudgment or postjudgment interest is appropriate here, and, if so, the amount of interest owed. *See In re Exxon Valdez*, 484 F.3d 1098, 1101 (9th Cir. 2007) ("[P]rejudgment interest is a substantive aspect of a plaintiff's claim, rather than a merely procedural mechanism"); *Fields v. Legacy Health Sys.*, 413 F.3d 943, 950 (9th Cir. 2005) ("Federal courts sitting in diversity must apply the forum state's choice of law rules to determine the controlling substantive law.").

Accordingly, within fourteen (14) days of this order, Trinchitella may file a supplemental brief, not to exceed ten pages, providing authority for the interest rate that controls here. ARP may file a response, not to exceed ten pages, seven days thereafter. Alternately, the parties may file a joint stipulation and proposed order, within fourteen (14) days. The court will then determine the appropriate interest, if any, and enter judgment against ARP.

IV. CONCLUSION

The motion to dismiss is GRANTED as to ARP, GRANTED in part as to Corix and DENIED as to the other defendants. Trinchitella may file an amended complaint consistent with this order and the court's confirmation of the arbitration award within fourteen days. Defendants' answer is due fourteen days thereafter.

Also within fourteen days, Trinchitella shall request entry of default as to AHIT or otherwise indicate his plans to prosecute this case against AHIT. He may file a supplemental brief,

17

not to exceed ten pages, identifying the appropriate rate of prejudgment and postjudgment interest, if any, that applies in light of the parties' choice of law provision.  ARP may respond to Trinchitella's supplemental brief, also not to exceed ten pages, seven days thereafter.  Alternately the parties may address the amount of interest in a joint stipulation to be filed within fourteen days.

        Finally, the court STRIKES ECF No. 41-3 and orders defendants to refile Exhibits E-I without the sensitive information contained in pages 94−127.

        IT IS SO ORDERED.

DATED:  June 19, 2019.

_____
UNITED STATES DISTRICT JUDGE